UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:16-CV-14301-ROSENBERG/LYNCH

MIGUEL DAVILA DURAN,

    Plaintiff,

v.

CHARLIE FELDMAN, OFFICER FOR VERO
BEACH POLICE DEPARTMENT, individually;
SEAN TOOLE, OFFICER FOR VERO BEACH
POLICE DEPARTMENT, individually; CITY OF
VERO BEACH, a political subdivision; and
CHIEF DAVID E. CURREY, Police Chief of the CITY
OF VERO BEACH, in his official capacity,

    Defendants.
_____/

# ORDER GRANTING IN PART AND DENYING IN PART OMNIBUS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FILED BY DEFENDANTS SEAN TOOLE, CHARLIE FELDMAN, CITY OF VERO BEACH, AND DAVID CURREY

## I. INTRODUCTION

Only one motion to dismiss Plaintiff's First Amended Complaint is now before the Court: The omnibus motion to dismiss filed by Defendants Officer Sean Toole, Officer Charlie Feldman, Police Chief David Currey, and the City of Vero Beach ("Omnibus Motion to Dismiss"). DE 42. A second motion to dismiss, which was filed by Defendants Grove Partners and Jared Smith, DE 52, was denied as moot in light of the settlement reached by Plaintiff and those two Defendants, DE 61. The Omnibus Motion to Dismiss is fully briefed, *see* DE 55, 56, and the Court has heard argument thereon, *see* DE 58. For the reasons discussed below, the Omnibus Motion to Dismiss is hereby **GRANTED IN PART AND DENIED IN PART**.

## II. LEGAL STANDARD

Defendants have moved for the Court to dismiss portions of Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations are not required," a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In determining whether this standard is met, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to plaintiff. *Twombly*, 550 U.S. at 678-79. But legal conclusions—including those couched as factual allegations—are not entitled to a presumption of truth. *Id.* Ultimately, the inquiry is a context-specific one requiring the Court to draw on its "judicial experience and common sense." *Id.*

## III. BACKGROUND

At the motion to dismiss stage the Court assumes the truth of these factual allegations, which are contained in the Amended Complaint. On December 20, 2012, Plaintiff Miguel Davila Duran met friends and co-workers at The Grove, a local bar. DE 1 at ¶ 15. While at The Grove, Plaintiff ordered a meal for delivery from an adjacent restaurant: The Italian Kitchen Pizzeria & Restaurant ("Italian Kitchen"). *Id.* at ¶ 17. After delivering Plaintiff's food to The Grove, the delivery person walked back to the Italian Kitchen to run Plaintiff's credit card. *Id.* at ¶ 18.

Later, Plaintiff realized that he had misplaced his credit card. *Id.* at ¶ 19. Fearing it had been left at the restaurant or at The Grove, Plaintiff returned to the area during the early hours of

December 21, 2012. *Id.* at ¶¶ 19-20. Plaintiff approached an employee working at the door of The Grove and asked whether the employee had seen his credit card. *Id.* at ¶ 21. The employee had not. *Id.* at ¶ 22. Plaintiff did not enter The Grove on December 21, 2012. *Id.* at ¶ 23.

Having searched for his credit card, Plaintiff decided to stay for dinner at the Italian Kitchen. *Id.* at ¶ 24. An employee asked Plaintiff to wait outside until his table was ready. *Id.* Plaintiff took a seat on a bench directly outside the restaurant. *Id.* at ¶ 25. While Plaintiff was waiting, Defendant Smith flagged down Officer Feldman and requested that a certain individual be removed from The Grove. *Id.* at ¶ 28.

Plaintiff, who had decided to check on his table, rose from the bench on which he had been sitting. *Id.* at ¶ 30. As Plaintiff reached the door to the Italian Kitchen he felt a hand on his back. *Id.* at ¶ 31. When Plaintiff turned to see who had touched him, his jacket was pulled over his head, obstructing his view. *Id.* Officer Feldman, who had touched Plaintiff, dragged him into the Italian Kitchen and attempted to place Plaintiff on a chair. *Id.* at ¶ 35.

Having been dragged into the restaurant with his jacket pulled over his eyes, Plaintiff attempted to re-orient himself. *Id.* at ¶ 36. Officer Feldman "continued to forcibly drag, push, and hold" Plaintiff. *Id.* at ¶ 37. Plaintiff was thrown to the ground with his arms pinned beneath his torso. *Id.* at ¶ 38. Officer Feldman commanded Plaintiff to put his hands behind his back; however, Plaintiff was unable to do so because Officer Feldman was on top of Plaintiff, pinning Plaintiff's arms beneath his torso. *Id.* at ¶ 37. Officer Feldman discharged his taser into Plaintiff's back, disorienting Plaintiff and creating two "puncture and burn" wounds. *Id.* at ¶ 40.

Sometime during the incident, Officer Toole arrived. Together, the two Officers carried Plaintiff outside of the Italian Kitchen, *id.* at ¶42, where Plaintiff's initial request for medical attention was refused, *id.* at ¶ 43. Plaintiff—whose hands were restrained behind his back in

3

handcuffs—was then then led away from the Italian Kitchen. *Id.* at 46-46. Plaintiff treated both Officers "calmly, and with respect and deference." *Id.* at ¶ 46. Without reason, Officer Feldman discharged his taser a second time, creating two more "puncture and burn" wounds on Plaintiff's upper left arm. *Id.* at ¶ 46-47.

Plaintiff was arrested and charged with disorderly intoxication, pursuant to Florida Statute § 856.011(1) and with resisting an officer without violence, pursuant to Florida Statute § 843.02. *Id.* at ¶ 50. After being acquitted of all charges stemming from this incident, *id.* at ¶ 55, Plaintiff brought suit. Plaintiff's initial Complaint was filed on July 18, 2016. DE 1. On September 22, 2016, Plaintiff filed his Amended Complaint, DE 35, in response to the Motion to Dismiss filed by Officer Feldman, DE 31. The Omnibus Motion to Dismiss now before the Court is directed toward Plaintiff's Amended Complaint. DE 42.

### I. DISCUSSION

Defendants Officer Sean Toole, Officer Charlie Feldman, Police Chief David Currey, and the City of Vero Beach have styled the Omnibus Motion to Dismiss a motion "to dismiss the Fourteenth Amendment Claim in Count I, *along with the entirety of* Counts II, III, IV, V, VI, and VII." DE 42 at 1 (emphasis added). However, the only aspects of Counts V and VI to which Defendants object are the claims for attorney's fees contained therein. Accordingly, only Counts II, III, IV, and VII are truly opposed in their entirety.

For the reasons detailed below Defendants' motion to dismiss the Fourteenth Amendment Claim in Count I is denied. However, the claims in Counts II, III, IV and VII are dismissed without prejudice. The Court need not reach Defendants' objections to the claims for attorney's fees contained in Counts V and VI in light of agreement reached during the hearing that Plaintiff would remove those claims for attorney's fees from any Second Amended Complaint. *See* p. 14-15, *infra*.

## A. Count I: Whether the Fourth Amendment Applies to the Exclusion of the Fourteenth Amendment as a Matter of Law.

Not "all excessive force claims brought under § 1983 are governed by a single generic standard." *Graham v. Connor*, 490 U.S. 386, 393 (1989). Courts must look at the specific factual context, identifying the constitutional right implicated by the challenged conduct. *Id.* at 394. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham*, 490 U.S. at 394). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 394-95. But "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," and require a showing of deliberate indifference to a substantial risk of serious harm. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (1996). Put simply: If excessive force was used against Plaintiff during "the course of an arrest, investigatory stop or other 'seizure' of a free citizen," the Fourth Amendment applies to the exclusion of substantive due process. *Graham*, 490 U.S. at 394-95. If, however, excessive force was used against Plaintiff as a pretrial detainee or as an arrestee in custody, substantive due process applies.

Plaintiff acknowledges that everything that transpired until he was handcuffed occurred in the course of arrest. *See* Hearing Trans. at 15:3-8. Accordingly, Plaintiff acknowledges that insofar as his excessive force claim arises out of the events occurring *before* he was handcuffed—including the first use of the taser—only the Fourth Amendment applies. But

5

Plaintiff disputes that the Fourth Amendment also covers the second use of the taser, which occurred *after* Plaintiff had been handcuffed and while he was being led away from the Italian Kitchen. Plaintiff argues that because the second use of the taser *did not* occur in the course of an arrest, substantive due process applies.

Specifically, Plaintiff argues that substantive due process applies to the events occurring after he was handcuffed because "by virtue of [his] arrest . . . [Duran's] status had evolved into that of an arrestee in custody." DE 55 at 5 (citing *Rosa v. City of Fort Myers*, Case No. 205-CV-481-FTM-29SPC, 2007 WL 3012650, at *12 (M.D. Fla. Oct. 12, 2007), *aff'd in part sub nom. Rosa v. City of Fort Myers, FL*, 297 F. App'x 830 (11th Cir. 2008)). But Plaintiff's argument from *Rosa* is an exercise in selective quotation. The complete passage reads: "[P]laintiff has been arrested and brought to the police station where she was detained as the booking process took place. Plaintiff had clearly been seized within the meaning of the Fourth Amendment by virtue of her arrest, but her status evolved into that of an arrestee in custody." *Id.* The district court did *not* conclude that the Fourteenth Amendment ought to apply because plaintiff was arrested; rather, it so concluded because plaintiff's status "evolved into that of an arrestee in custody" when she was detained at the police station during booking. *Id.* Plaintiff also argues from *Crenshaw v. Lister*, Case No. 2:03-cv-134, 2008 WL 151881, at *6 (M.D. Fla. Jan. 15, 2008). But, in *Crenshaw*, the district court applied the Fourteenth Amendment because although "[p]laintiff had clearly been seized within the meaning of the Fourth Amendment by virtue of his arrest, [] his status had evolved into that of an arrestee in custody while being interrogated." *Id.* Here, Plaintiff was neither interrogated at the police station nor detained there during booking—he was led away in handcuffs. Accordingly, neither *Rose* nor *Crenshaw* meaningfully support Plaintiff's position.

However, the Court nonetheless declines to dispose of Plaintiff's Fourteenth Amendment claim at this early stage. "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled" in the Eleventh Circuit. *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005). A survey of the case law reveals the question of which amendment applies to be a fact-intensive one. *Compare Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (applying the Fourteenth Amendment where decedent, who had already been subdued and handcuffed, died of positional asphyxiation during the drive to the police station) *with Garrett v. Athens-Clarke Cty., Ga.*, 378 F.3d 1274, 1279 (11th Cir. 2004) (applying Fourth Amendment to exclusion of Fourteenth Amendment where decedent fettered at the scene died of positional asphyxiation after already having been handcuffed because "[a]lthough the line is not always clear as to when an arrest ends . . . the facts here fall on the side of arrest"). The Court will, if appropriate address this issue at summary judgment upon a fully developed factual record. Defendants' Motion to Dismiss the Fourteenth Amendment Claim contained in Count I is denied.

### B. Count II: Whether the Amended Complaint States a Claim under 28 U.S.C. § 1983 Against David Currey in his Official Capacity as Chief of Police.

Plaintiff has brought suit against David Currey in his official capacity as the Police Chief of the City of Vero Beach pursuant to 28 U.S.C. § 1983. Suing a municipal official in his official capacity is, however, the functional equivalent of suing the municipality itself. It is hornbook law that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, liability generally[1]

---

[1] A narrower theory of municipal liability, grounded in a "failure to train or supervise" is discussed below. *See* p. 8, *infra*.

attaches only when a constitutional violation is caused by a municipal policy or custom. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). Plaintiff must, therefore, plead the elements of municipal liability: "(i) that his constitutional rights were violated; (ii) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (iii) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997), *cert. denied*, 522 U.S. 1075 (1998).

The question before the Court is whether Plaintiff has sufficiently pleaded the existence of a municipal policy or custom that caused his injury. *See* DE 35 at 12-14, ¶¶ 89-93. The undersigned is not the first judge to grapple with these very allegations. Plaintiff appears to have lifted this portion of his First Amended Complaint directly from an amended complaint filed against the City of Vero Beach in an earlier case. *See Landsman v. City of Vero Beach*, Case No. 13-cv-14375, 2014 WL 12204812 at * 4 (S.D. Fla. July 18, 2014) (Graham, J). As in *Landsman*, Plaintiff provides a list of Chief Currey's general duties as Chief of Police, DE 35 at 12-13, ¶ 89 (a)-(d), followed by an allegation that Officer Toole and Officer Feldman's actions "were proximately caused by the policies, customs, and practices, of Defendant Police Chief Currey because [he] failed to fulfill his duties as alleged in the previous paragraphs . . ." *Id.* at ¶ 90. The Court agrees with Judge Graham that these allegations are insufficient.

8

Although "detailed factual allegations" are unnecessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A formulaic recitation is all Plaintiff has provided. The Amended Complaint does not contain any allegation referring to a particular municipal policy or custom. Instead, Plaintiff alleges that the actions of Officers Feldman and Toole "were proximately caused by the policies, customs, and practices, of Defendant Police Chief Currey because [he] failed to fulfill his duties as alleged in the previous paragraphs . . ." *Id.* at ¶ 90. This conclusory allegation, which attempts to spin a "custom or practice" out of Chief Currey's failure to perform a laundry list of broadly stated duties, is insufficient.

According to Plaintiff, *Adams v. Coats*, Case No. 8:07-cv-638, 2008 WL 276041 at *2 (M.D. Fla. Jan. 31, 2008) counsels a different conclusion. Plaintiff represents that, in *Adams*, "plaintiff alleged only that the policies, customs, and usages of the Pinellas County Sheriff's Office caused Taylor to violate [the plaintiff's] constitutional rights." DE 55 at 9 (internal citations and quotations omitted). But review of the underlying amended complaint in *Adams* reveals specific reference to policies regarding the use of deadly force. The amended complaint notes: "Following the unconstitutional use of deadly force . . . the Pinellas County Sheriff's Office found officially that . . . [the] use of deadly force was consistent with the official policies and procedures of the Pinellas County Sherriff's Office." *Adams*, Case No. 8:07-cv-638, DE 19 at ¶ 40. The Court, therefore, concludes that *Adams* is distinguishable.

Plaintiff also alleges a claim against David Currey in his official capacity as the Police Chief for the City of Vero Beach for failure to train or supervise. The "failure to train or supervise" theory of liability is narrow than, and is often alleged in addition to, the "policy or custom" theory of liability discussed above. *See, e.g., Watts v. City of Hollywood, Florida*, 146

9

F. Supp. 3d 1254, 1270 (S.D. Fla. 2015) (discussing the two theories of municipal liability). A municipality may only be held liable for failure to train or supervise where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton*, 489 U.S. at 389-91).

Because a municipality will rarely have a written or oral policy of inadequately training or supervising employees, liability also attaches "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants such that the failure to train can properly be thought of as a city policy or custom . . ." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997) (quoting *City of Canton*, 489 U.S. at 389) (internal quotation omitted). To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1351. The Eleventh Circuit has "repeatedly [] held that without notice of a need to train or supervise in a *particular area*, a municipality is not liable as matter of law for any failure to train or supervise." *Id.* Although "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to provide such notice, the Supreme Court has "hypothesized" that a municipality may also be held liable when a single incident is the "obvious" consequence of a failure to train or supervise. *Connick v. Thompson*, 563 U.S. 51, 61-63 (2011) (quoting *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 403 (1997)).

Here, again, the allegations in Plaintiff's Amended Complaint are virtually identical to those Judge Graham analyzed in *Landsman*. *See* Case No. 13-cv-14375, 2014 WL 12204812 at * 4 (S.D. Fla. July 18, 2014) (Graham, J). Again, the Court agrees with Judge Graham. The

Amended Complaint's allegations are insufficient to state a claim for relief. Even taken in the light most favorable to Plaintiff, the Amended Complaint does not plead facts giving rise to a reasonable inference of deliberate indifference. First, the Amended Complaint does not support the existence of a "pattern of similar constitutional violations." *See Connick*, 563 U.S. at 61-63 (internal citation omitted). Apart from conclusory allegations regarding Chief Currey's duties, all of the factual allegations in the Amended Complaint are limited to the incident giving rise to this case. *See* DE 31 at ¶ 1-62. Nor does the Amended Complaint plead that the need to train or supervise in the particular area at issue is "so obvious" and the likelihood of a constitutional violation so "highly predictable" that pleading the existence of prior incidents is unnecessary. Therefore, Plaintiff's claims in Count II against Chief Currey are dismissed.[2] However, dismissal is without prejudice because "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis,* 371 U.S. 178, 182 (1962), leave to amend "should be freely given," Federal Rules of Civil Procedure 15(a).

### C. Count III: Whether the Amended Complaint States a Negligence Claim Against Defendant City of Vero Beach.

Plaintiff has brought state law negligence claims against Defendant City of Vero Beach for negligent supervision and retention.[3] A claim for negligent supervision is cognizable under Florida law "when, during the course of employment, the employer becomes aware, or should have been aware, of the problems with an employee indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment." *Samedi v. Miami-*

---

[2] Plaintiff's punitive damages claim against Chief Currey is discussed separately in Section F, which follows.

[3] Plaintiff's Amended Complaint also alleges negligent training. But when discussing Count III during the hearing, Plaintiff's counsel stated that Plaintiff would not pursue a negligent training claim. Hearing Trans. at 21:13-14 (The Court: You are not pursuing negligent training? Mr. Kohen: Correct). Accordingly, Plaintiff's negligent training claim against Defendant City of Vero Beach is dismissed without prejudice.

11

*Dade Cnty.*, 134 F. Supp. 2d 1320, 1352-53 (S.D. Fla. 2001). In Florida, a negligent supervision claim is analyzed under the same standard as a negligent retention claims. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

To survive a motion to dismiss, a complaint filed in federal court must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). To adequately plead negligent supervision and retention, Plaintiff must allege facts supporting the reasonable inference that Defendant City of Vero Beach had actual or constructive notice of problems indicating that Defendants Feldman and Toole were unfit. All of the facts in the "General Allegations," which are incorporated by reference into the relevant count, relate *solely* to the events at issue. Accordingly, those allegations could not have provided notice Defendants Feldman and Toole "had harmful propensities—prior to the incident at issue here—or were otherwise unfit to serve." *Watts v. City of Hollywood, Florida*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (internal citations, quotations, and alterations omitted). The allegations relevant to the fitness of Defendants Feldman and Toole contained within the count itself are conclusory:

> 100. Defendant Vero Beach knew or should have known Defendant Officer Feldman and Defendant Officer Toole had a propensity for misconduct, including excessive use of force, against members of the public . . .
>
> 101. At all times material hereto, Defendant Vero Beach breached its duty to exercise care in the hiring, supervision, and retention of Feldman and/or Toole in one or more of the following ways: . . .
>
>   b. By retaining Defendant Officer Feldman and Defendant Officer Toole when Defendant Vero Beach knew or should have known that Feldman and/or Toole were unreasonably dangerous to the public;

The only factual allegation arguably related to the fitness of Defendants Toole and Feldman is simply too vague. According to Plaintiff, Defendant Vero Beach breached its duty "[b]y

allowing its agents and employees to use intimidation, threats, coercion and excessive force." DE 35 at 16. But without any more detail this lone allegation—even construed in Plaintiff's favor—is insufficient to support the inference that Plaintiff is referring to behavior during some incident that could have provided Defendant Vero Beach actual or constructive notice, as opposed to the behavior at issue in this case. Because more detailed factual allegations could potentially cure the defects in Plaintiff's claim for negligent hiring or supervision, this claim, too, is dismissed without prejudice.

### D. Count IV: Whether the Amended Complaint States a Claim for Direct and Vicarious Negligence Against Defendant Feldman, Defendant Toole, and Defendant City of Vero Beach.

As recognized by the Eleventh Circuit, "Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (quotation marks omitted), *review denied*, 683 So. 2d 484 (Fla.1996)). "[A] separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force," however, "the negligence component *must pertain to something other than the actual application of force during the course of the arrest*." *Sanders*, 672 So. 2d at 46 (emphasis added). For example, in *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001), the Eleventh Circuit reversed a district court's dismissal of a plaintiff's claim for negligent use of a firearm. The district court had relied upon the proposition that Florida law does not recognize a cause of action for negligent use of excessive force. But the Eleventh Circuit concluded that principle was inapplicable because Florida law "clearly recognizes a cause of action for the negligent handling

13

of a firearm and the negligent decision to use a firearm *separate and distinct from an excessive force claim.*" *Id.* (emphasis added).

Here, however, Plaintiff's allegations pertain only to the application of force during the course of his arrest. The Amended Complaint states:

> 105. Defendant Officer Feldman and Defendant Officer Toole had a duty of care to Duran and to other potential arrestees to follow reasonable and established policies and procedure Defendant Vero Beach regarding use of excessive use of force during arrests.
>
> 106. Defendant Officer Feldman and Defendant Officer Toole failed to follow reasonable and established procedures of Defendant Vero Beach by the use of excessive force greater than reasonable or necessary in the arrest of Duran. . .
>
> 108. By the breach of their duties of care, Defendant Officer Feldman and Defendant Officer Toole were negligent under Florida law, which directly and proximately caused severe injuries to Duran, and are responsible for the damages he suffered.

DE 35 at 18. Once again, the undersigned is not the first judge to address these allegations. Plaintiff also appears to have lifted this portion of his First Amended Complaint directly from the original complaint filed against the City of Vero Beach in *Landsman v. City of Vero Beach*, Case No. 13-cv-14375, 2014 WL 12204812 at * 4 (S.D. Fla. July 18, 2014) (Graham, J). The Court agrees with Judge Graham that these allegations are grounded directly in "the actual application of force during the course of the arrest." *Sanders*, 672 So. 2d at 46. Because Plaintiff's claim is not grounded in a distinct act of negligence it is, hereby, dismissed. In light of the axiom that leave to amend is to be liberally permitted, the Court will give Plaintiff another opportunity to properly plead its negligence claim. But the Court cautions Plaintiff that the negligence claim, if

14

reasserted, *must pertain to something other than the actual application of force during the course of the arrest.*" *Sanders*, 672 So. 2d at 46 (emphasis added).[4]

### E. Whether the Requests for Attorney's Fees in Counts III, V, VI, and VII Should be Dismissed.

Defendants' Motion to Dismiss argues that the claims for attorney's fees in Counts III, V, VI, and VII need to be dismissed because Plaintiff did not allege a contractual or statutory basis for attorney's fees. DE 42 at 23. Plaintiff responded that he need not set forth any such basis at this stage, citing *Llano Group Funding v. Cassidy*, Case No. 2015 WL 4698407 (S.D. Fla. August 6, 2015). In Reply, Defendants conceded Plaintiff was not required to plead a specific statutory or contractual basis for a claim for attorney's fees at this stage in light of the Florida Supreme Court's decision in *Caufield v. Cantele*, 837 So. 2d 371, 377 (Fla. 2002). However, Defendants' Reply asserted that Plaintiff's claims for fees flew in the face of Rule 11 because "there is no conceivable contractual or statutory basis for an award of attorney's fees" for these state law claims. DE 56 at 8.

The Court need not explore these arguments further. At the hearing, Plaintiff's counsel agreed to remove the portions of Counts III, V, VI, and VII seeking attorney's fees provided an understanding existed that Plaintiff was not waiving his right to seek fees later in the litigation. Hearing Trans. 27: 11-16. Defendants' counsel confirmed his understanding that Plaintiff's right to seek attorney's fees was not being waived on the record. *Id.* at 17-22. Pursuant to the agreement reached at the hearing, Plaintiff will remove discussion of attorney's fees from these counts of any Second Amended Complaint.

---

[4] Having concluded Count IV fails to state a claim, the Court need not address Defendants' alternative argument that, under Florida State § 728.28, Defendant City of Vero Beach and Defendants Toole and Feldman cannot simultaneously be held liable.

F. **Whether the Requests for "Punitive and Exemplary Damages" from Defendant Currey in his Official Capacity and from Defendant City of Vero Beach Should be Dismissed.**

Several counts of the Amended Complaint directed toward Defendant City of Vero Beach or Defendant Currey in his capacity of Chief of Police for the City of Vero Beach seek punitive damages. However, as noted above, suing a municipal official in his official capacity is the functional equivalent of suing the municipality itself. And, under both 42 U.S.C. § 1983 and Florida law, a municipality cannot be sued for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); Fla. Stat. § 1768.28(5) ("The state and its agencies and subdivisions shall be liable in tort claims in the same manner and to the same extent as a private individual . . . but liability shall not include punitive damages or interest for any period before judgment"). But the Court need not explore these arguments further. At the hearing, Plaintiff's counsel agreed to remove the portions of the counts seeking punitive damages against either Defendant Currey in his official capacity or Defendant City of Vero Beach. Hearing Trans. 28:8-14.

G. **Count VII: Whether the Amended Complaint States a Claim for False Arrest.**

Defendants make several arguments for dismissing Count VII. First, Defendants argue Count VII is pleaded in contravention of Federal Rule of Civil Procedure 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and to state "each claim founded on a separate transaction or occurrence . . . in a separate count" wherever "doing so would promote clarity." The Eleventh Circuit has interpreted this language as requiring separate counts for separate claims. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citing *Anderson v. Dist. Bd. of*

*Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Count IV of Plaintiff's Amended Complaint—styled "False Arrest in Violation of 42 U.S.C. § 1983 and Florida law"—tangles state and federal false arrest claims. Plaintiff does not argue otherwise and has, in light of the argument presented by Defendants, requested leave to re-plead.

Second, Defendants protest Plaintiff's failure to identify the specific constitutional right underlying Plaintiff's claim under 28 U.S.C. § 1983. As the Supreme Court has recognized, § 1983 " . . . merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States. One cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (internal citations and quotations omitted). Plaintiff mentions the Fourth and Fourteenth Amendments in Count I, but not in Count VII, which refers broadly to a violation of Plaintiff's "federally protected constitutional rights." DE 35 at 21, ¶ 127. Defendants should not be left guessing whether one or both of the constitutional claims mentioned in a separate count of the Amended Complaint form the basis of Plaintiff's claim under 42 U.S.C. § 1983. The Court, therefore, agrees with Defendants that any count in Plaintiff's Second Amended Complaint addressed to a § 1983 violation should specify the specific constitutional provision in which the alleged violation is grounded.

Third, Defendants argue that the portions of Count VII directed at Defendant City of Vero Beach are deficient because no mention is made of a municipal policy or custom, an essential element of municipal liability. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). Again, Plaintiff does not argue otherwise and has, in light of the argument presented by Defendants, requested leave to re-plead. Hearing Trans. 35:16-22.

Fourth, and finally, Count VII is pleaded in a manner that would immunize Defendant City of Vero Beach from liability in tort. Florida Statute § 768.28(9)(a) provides: "The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Accordingly, "Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property." *Moore v. Miami-Dade Cty.*, 502 F. Supp. 2d 1224, 1235 (S.D. Fla. 2007) (citing *City of Fort Lauderdale v. Todaro*, 632 So. 2d 655, 656-58 (Fla. Dist. Ct. App. 1994); *Willis v. Dade County Sch. Bd.,* 411 So. 2d 245, 246 (Fla. Dist. Ct. App. 1982)). The Amended Complaint alleges Defendants Toole and Feldman acted "willfully, maliciously, in bad faith, and in reckless disregard of [Plaintiff's] federally protected constitutional rights." DE 35 at 21, ¶ 127; *see also id.* at 22, ¶ 137 (alleging Defendants Toole and Feldman acted "maliciously, willfully, or with a reckless or wanton disregard for the constitutional rights of [Plaintiff]"). But alleging Defendants Toole and Feldman acted willfully, maliciously, recklessly, and in bad faith and seeking to hold Defendant City of Vero Beach liable for that very conduct clearly contravenes Florida Statute § 768.28(9)(a). Plaintiff does not argue this point, acknowledging leave to re-plead is necessary. For all of these reasons, Count VII, too, is dismissed without prejudice.

## II. CONCLUSION

Defendants' Omnibus Motion to Dismiss [DE 42] is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to dismiss the Fourteenth Amendment Claim in Count I is **DENIED**. The motion to dismiss claims in Counts II, III, IV and VII is **GRANTED**; however, dismissal is without prejudice. The Court need not reach Defendants' objections to the

claims for attorney's fees contained in Counts III, V, VI, and VII or the claims for punitive damages from Defendant City of Vero Beach and from Defendant Currey in his official capacity in light of agreement reached during the hearing that Plaintiff would remove those claims from any Second Amended Complaint. Plaintiff's Second Amended Complaint is due on or before April 24, 2017.

Because this case was not stayed and because at least one claim was never challenged, the Court assumes that the parties have been diligently proceeding with discovery, per the deadlines memorialized in the Scheduling Order. The Court emphasizes that the deadlines therein—including the approaching May 22, 2017 discovery deadline and the June 12, 2017 dispositive motions deadline—remain in place.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 13th day of April, 2017.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE